# Exhibit A

Approved, SCAO

| | | |
|---|---|---|
| | Original - Court<br>1st Copy- Defendant | 2nd Copy - Plaintiff<br>3rd Copy -Return |

| **STATE OF MICHIGAN**<br>**THIRD JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **SUMMONS** | **CASE NO.**<br>**21-017284-CB**<br>**Hon.Edward Ewell, Jr.** |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226          Court telephone no.: 313-224-5195

| Plaintiff's name(s), address(es), and telephone no(s)<br>MARATHON PETROLEUM COMPANY LP | v | Defendant's name(s), address(es), and telephone no(s).<br>TYCO FIRE PRODUCTS, LP<br><br>C/O<br>CT Corporation System, at the Corporation Company<br>40600 Ann Arbor Road East<br>Suite 201,<br>Plymouth, Michigan 48170 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no<br><br>James E. Deline 45205<br>500 Woodward Ave Ste 2500<br>Detroit, MI 48226-5499 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☒ is no longer pending.

Summons section completed by court clerk.          | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/16/2021 | Expiration date*<br>3/17/2022 | Court clerk<br>Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



| **STATE OF MICHIGAN**<br>**3rd JUDICIAL CIRCUIT**<br>**COUNTY OF WAYNE** | **VERIFICATION OF**<br>**BUSINESS COURT ELIGIBILITY**<br>**AND NOTICE OF ASSIGNMENT** | **CASE NO.**<br>21-          -CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Plaintiff(s)<br><br>MARATHON PETROLEUM COMPANY<br>LP | v | Defendant(s)<br><br>3M COMPANY (f/k/a MINNESOTA MINING AND MANUFACTURING CO.); NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD, INC.; HAYDEN & COMPANY; WILLFIRE LLC; and DOE DEFENDANTS 1 TO 20 |
|---|---|---|

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2) and MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O),MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

### [*Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)*]

1. **Parties**. This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

   ☑ all of the parties are business enterprises

   ☐ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

   ☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

   ☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

   **AND**

2. **Actions**. This business or commercial action as defined by *MCL 600.8031(2)* involves,

   ☐ information technology, software, or website development, maintenance, or hosting

   ☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

   ☐ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

   ☐ commercial transaction, including commercial bank transactions

   ☐ business or commercial insurance policies

   ☐ commercial real property

   ☑ other type of business or commercial dispute (explain): This is an action to recover costs incurred in remediation of PFAS compounds.

| **12/16/21** | */s/ James E. DeLine* |
|---|---|
| Date | Signature |
| | **James E. DeLine**          **P45205** |
| | Name (type or print)          Bar no. |

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MARATHON PETROLEUM COMPANY LP,

Plaintiff,

v.

3M COMPANY (f/k/a MINNESOTA MINING AND
MANUFACTURING CO.); NATIONAL FOAM,
INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD,
INC.; HAYDEN & COMPANY; WILLFIRE LLC;
and DOE DEFENDANTS 1 TO 20,

Defendants.

Case No. 21 - _____ CB

HON.

---

James E. DeLine (P45205)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com
*Attorneys for Plaintiff*

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
**HOLLINGSWORTH LLP**
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*

---

*There exists no other pending or resolved civil action arising out of the transaction
or occurrence alleged in the Complaint.*

*This case involves a business or commercial dispute as defined by MCL 600.8031
and meets the criteria to be assigned to the business court.*

## COMPLAINT AND JURY DEMAND

# TABLE OF CONTENTS

INTRODUCTION AND NATURE OF ACTION ................................................................... 1

PARTIES ............................................................................................................................. 3

JURISDICTION AND VENUE .......................................................................................... 8

GENERAL ALLEGATIONS ............................................................................................... 8

    I.    Research and Development of PFAS ....................................................................... 8

    II.   3M's Specific Attempts to Conceal the Environmental Characteristics of PFAS.................. 11

    III.  Defendants Continually Sold PFAS-Containing AFFF to Marathon for Decades ........... 14

    IV.  Increased Regulation of PFAS ............................................................................ 17

    V.   Marathon's Discovery of the Environmental Characteristics of PFAS-Containing   AFFF, and its Continued Commitment to the Community .......................................... 20

COUNT I:  SILENT FRAUD ............................................................................................ 23

COUNT II:  INNOCENT MISREPRESENTATION ......................................................... 23

COUNT III:  NUISANCE - COMMON LAW/MCL 324.3109 ......................................... 24

COUNT IV:  FAILURE TO WARN / MCL 600.2948(3) .................................................. 25

COUNT V:  PRODUCT DESIGN DEFECT .................................................................... 26

COUNT VI:  NEGLIGENCE ........................................................................................... 27

COUNT VII:  NREPA PART 201 COST RECOVERY .................................................... 28

COUNT VIII:  NREPA PART 201 CONTRIBUTION ..................................................... 29

COUNT IX:  UNJUST ENRICHMENT ........................................................................... 31

COUNT X:  DECLARATORY JUDGMENT .................................................................... 31

PRAYER FOR RELIEF ................................................................................................... 32

The above-captioned Plaintiff (hereafter, "Marathon"), by and through its counsel, KERR, RUSSELL AND WEBER, PLC and HOLLINGSWORTH LLP, hereby states as its Complaint against above-named Defendants (collectively, the "Defendants") as follows:

## INTRODUCTION AND NATURE OF ACTION

1.      3M Company ("3M") is one of the largest chemical companies in the world, with annual revenues of $32 billion, an employee base of over 95,000 (including more than 8,000 scientists and researchers), and research facilities that dwarf those of most universities, major corporations, and even some countries.  It markets itself to customers based on its touted scientific expertise.

2.      In the 1940s, 3M began developing a group of organic fluorine chemical products—perfluoroalkyl and polyfluoroalkyl substances ("PFAS")—that were sold for a variety of industrial uses.  For example, two of the PFAS chemicals, commonly referred to as perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"), when applied to a surface, make that surface water-repellant.  From the 1940s onward, 3M has been the world leader in understanding and using these chemicals, but it has kept secret much of what it has learned throughout the ensuing decades from regulators, customers, its own employees, and the public.

3.      PFOS, PFOA, and perfluorohexane sulfonate ("PFHxS") are but a few of the chemicals known as "Long-Chain" or "C-8" PFAS compounds because they possess longer and more stable carbon chains.

4.      Historically, these Long-Chain PFAS compounds have been used in a variety of applications.  One of the common applications of PFAS is in aqueous film-forming foam and

related products ("AFFF").[1]  Since the 1970s, Defendants have made and sold Long-Chain based PFAS-containing AFFF, including to Marathon.

5.      For purposes of this complaint, PFAS-containing AFFF will only refer to AFFFs containing these Long-Chain PFAS compounds.  PFAS-containing AFFF does not refer to AFFFs based on C-6, C-4 or other shorter chain compounds.

6.      AFFF are Class B firefighting foams used for fire suppression, fire training, and flammable vapor suppression.  These foams are used to extinguish Class B fires, which involve flammable and combustible liquids, such as gasoline, oil, and jet fuel.  In addition to PFOA and PFOS, and PFHxS, AFFF can also contain their salts, ionic states, and acid forms of molecules, as well as their "precursor" chemicals, and other PFAS compounds.

7.      As a result of their chemical structure, PFAS-containing AFFF are stable, mobile, persistent in the environment, and resistant to biodegradation.  When PFAS-containing AFFF are released into the environment, they migrate into and stay in surface water and groundwater causing contamination due to their environmental characteristics.

8.      3M formulated its own AFFF, 3M FC-600 Light Water™, that was sold to refineries, industrial facilities, fire training centers, and other customers all over the world.  For decades, 3M sold to Marathon 3M FC-600 Light Water™ and other PFAS-containing AFFF.

9.      In addition to 3M, all Defendants manufactured, marketed, distributed, supplied, sold, transported, and arranged for disposal of PFAS-containing AFFF to Marathon.

10.     In late 2018, as a result of Defendants' actions, Marathon was informed of PFAS contamination at its Detroit Refinery located in Wayne County, Michigan (the "Site").  Marathon

---

[1] PFAS-Containing AFFF may also refer to, among other compounds, the following: Alcohol-Resistant Aqueous Film-Forming Foam ("AR-AFFF"); Fluoroprotein Foam ("FP"); Alcohol-Resistant Fluoroprotein Foam ("FPAR"); Film-Forming Fluoroprotein Foam ("FFFP"); and Alcohol-Resistant Film-Forming Fluoroprotein Foam ("AR-FFFP").

is currently investigating, sampling and planning the remediation of this PFAS contamination. Due to this contamination, Marathon's use, enjoyment, and value of its properties have been impacted. Additionally, Marathon now faces millions of dollars in response costs, disposal costs, replacement costs, and likely future litigation.

11.     3M and other Defendants designed, studied, and sold PFAS-containing AFFF compounds for decades.

12.     Upon learning of the environmental characteristics of certain PFAS compounds, the Defendants chose to suppress material information, control the scientific research available to the public, withhold information from regulators like the United States Environmental Protection Agency ("EPA"), and lull customers like Marathon into believing that PFAS-containing AFFF were safe and could not result in environmental contamination.

13.     In addition to its investigation and remedial costs, Marathon has previously undertaken efforts at the Site to store, house, remove from equipment, and dispose of PFAS-containing AFFF, which have been rendered useless and unusable by Michigan regulations. Defendants have yet to pay for any of these costs borne by Marathon. Accordingly, Marathon is filing this action to recover costs it has incurred and will incur investigating and remediating the Site.

## PARTIES

14.     Marathon is a limited partnership comprised of three partners: Marathon Petroleum Corporation, a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio; general partner MPC Investment LLC, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio; and Giant Industries, Inc., a corporation

organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio. Marathon owns the real property commonly known as 1001 S. Oakwood Avenue, Detroit, Michigan.

15.     Defendant **3M Company ("3M")** is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in St. Paul, Minnesota. 3M is a massive conglomerate with over 95,000 employees and extensive expertise in the chemical sciences. It is in the business of using that expertise to design, manufacture, and sell household, commercial, and industrial products. According to 3M, it manufactures over 60,000 products, and its revenues for 2020 exceeded $32 billion.

16.     On its website, 3M describes itself as a "global powerhouse" and a "constant name on the Fortune 500 list." It touts its research and development capabilities, with 8,100 scientists and researchers worldwide, labs in over 36 countries, over 112,000 patents, and $1.7 billion in annual expenditures for research and development alone.

17.     At all relevant times, 3M designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon causing injury to Marathon's property and the surrounding environment.

18.     Defendant **Tyco Fire Products, LP ("Tyco")** is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at One Stanton Street, Marinette, Wisconsin.

19.     On information and belief, Tyco is a subsidiary of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

20.     Tyco is the successor-in-interest to The Ansul Company ("Ansul"), having acquired Ansul in 1990.  After Tyco acquired Ansul in 1990, Tyco continued to manufacture, distribute, and sell PFAS-containing AFFF.  Ansul and Tyco (as the successor-in-interest to Ansul) will hereinafter be collectively referred to as "Tyco."  Tyco manufactured and currently manufactures the Ansul brand of products, including the Ansul brand of PFAS-containing AFFF.

21.     At all relevant times, Tyco designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

22.     Defendant **National Foam, Inc. ("National Foam")** is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 141 Junny Road, Angier, North Carolina.

23.     National Foam previously manufactured the Universal Gold brand of AFFF products.

24.     National Foam currently manufactures the Angus brand of AFFF products and is a subsidiary of Angus International Safety Group, Ltd, a United Kingdom private limited company.

25.     At all relevant times, National Foam designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

26.     Defendant **Chemguard, Inc. ("Chemguard")** is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 204 South 6th Avenue, Mansfield, Texas.

27. On information and belief, Chemguard is a subsidiary of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

28. At all relevant times, Chemguard designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

29. Defendant **Willfire HC, LLC, doing business as Williams Fire and Hazard Control, Inc. ("Williams")**, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 9605 Richard Wycoff Dr., Port Arthur, Texas.

30. On information and belief, Williams is a wholly-owned subsidiary of either Chemguard or Tyco.

31. On information and belief, both Tyco and Chemguard, and by extension Williams, are wholly-owned subsidiaries of Johnson Controls International Plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

32. On information and belief, Williams received its PFAS-containing AFFF from Tyco.

33. At all relevant times, Williams designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

34.     Defendant **Hayden and Company** is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 2604-B West 83rd Street, Darien, Illinois.

35.     At all relevant times, Hayden and Company designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF, which were purchased, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.

36.     **Doe Defendants 1 to 20** are other suppliers, designers, manufacturers, marketers, distributors, and/or sellers of PFAS-containing AFFF, which were sold to, stored, and/or used by Marathon and/or were stored and/or used on properties owned and/or operated by Marathon, causing injury to Marathon's property and the surrounding environment.     When the Doe Defendants are identified, they will be added by name.

37.     All Defendants: (a) supplied, designed, manufactured, marketed, distributed, and or/sold PFAS-containing AFFF that were bought and used by Marathon; (b) are legally responsible for and committed each of the wrongful acts alleged in this Complaint; and (c) promoted PFAS-containing AFFF, despite the availability of reasonable alternatives and their actual or constructive knowledge that the contamination alleged in this Complaint would be the inevitable result of their conduct.

38.     To the extent any act or omission of any Defendant is alleged in this Complaint, the officers, directors, agents, employees, or representatives of each such Defendant committed or authorized each such act or omission or failed to supervise adequately or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs

of such Defendants, and did so while acting within the scope of their duties, employment, or agency.

39. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

## JURISDICTION AND VENUE

40. This Court has jurisdiction over the subject matter of this action pursuant to MCL 600.605.

41. This Court may exercise jurisdiction over Defendants pursuant to MCL 600.715 because they are, or at the relevant times were, authorized to do business in Michigan; are, or at the relevant times were, registered with the Corporation, Securities & Commercial Licensing Bureau of the Michigan Department of Licensing and Regulatory Affairs; are, or at the relevant times were, transacting business in Michigan, or otherwise intentionally availing themselves of the Michigan market through the distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of PFAS-containing AFFF throughout the State of Michigan and/or at the relevant times owned, used, or possessed certain real and tangible property situated within the state.

42. The amount in controversy exceeds $25,000.

43. Venue is appropriate in Wayne County under MCL 600.1629(1).

## GENERAL ALLEGATIONS

### I. Research and Development of PFAS

44. PFAS are a family of man-made fluorinated compounds, which contain bonded fluorine and carbon chains.

45.    PFAS are commonly known as "forever" chemicals because they are stable, extremely persistent in the environment, and resistant to typical biodegradation.

46.    PFAS generally adsorb poorly and tend to be mobile in soil, surface water, and groundwater systems.

47.    This combination of properties enables PFAS to readily migrate in soil, surface water, and groundwater.

48.    These characteristics also mean that once PFAS are released into the environment, they migrate and can cause contamination and injury to the surrounding areas.

49.    In the late 1940s, a scientist at Pennsylvania State University, Dr. Joseph Simons, developed a means for producing PFAS on a commercial scale. The process is known as the Simons Cell Electrofluorination (or "Simons ECF") process. Dr. Simons patented his ECF process in 1948.

50.    3M ultimately purchased Simons's patents in the 1950s and began developing products using PFAS.

51.    3M introduced its first Long-Chain PFAS-containing product to the market in the 1950s.

52.    During the ensuing decades, 3M developed and sold many other products containing Long-Chain PFAS, including AFFF, stain repellants, stain removers, paints, hydraulic fluids, and semi-conductors.

53.    The remaining Defendants also began selling PFAS-containing AFFF as early as the 1970s.

54.    There are many different types of Long-Chain PFAS, each of which has unique properties.

55.     The three primarily at issue in this case are PFOA, PFOS, and PFHxS. On information and belief, other Long-Chain PFAS or perfourochemicals ("PFCs") found in AFFF may include, but are not limited to, the following: Perfluorobutyrate ("PFBA"), Perfluoropentanoic Acid ("PFPeA"), Perfluorobutane sulfonic acid ("PFBS"), Perfluorohexanoic acid ("PFHxA"), and Perfluoroheptanoic acid ("PFHpA"), among other PFAS compounds. PFAS are known to be mobile, stable, persistent, and resistant to biodegradation.

56.     The allegations of this complaint do not, and should not be inferred to, refer to firefighting foams based on shorter chain chemistry such as C-6-based AFFF. Additionally, this complaint does not allege, nor seek remedy for, contamination relating to "Mil-Spec AFFF," which are PFAS-containing AFFF manufactured in accordance with military specification and used on military bases, airfields, and Navy ships, and at certain civilian airports, as Mil-Spec AFFF has never been used at the Site.

57.     PFOS, however, and its close analog PFHxS, is a PFAS compound that is unique to 3M. On information and belief, 3M was the only manufacturer of PFOS in the United States until both PFOS and PFHxS were phased out in 2002 by the EPA.

58.     On information and belief, 3M's common PFAS-containing product, AFFF 3M FC-600 Light Water™, contained the 3M-specific Long-Chain PFAS compounds PFOS and PFHxS, among other PFAS compounds.

59.     Such Long-Chain PFAS have been used for decades in a wide array of consumer and industrial products, including AFFF.

60.     AFFF were developed to extinguish liquid, oil, fuel, and other flammable substances. AFFF are used as a foam solution intended to be sprayed directly onto fires or spilled fuel.

61.     PFAS-containing AFFF spread and expand across the surface of the liquid fires rapidly.  Once spread over the coverage area, many PFAS-containing AFFF products create an aqueous film on the surface of the flammable liquid, which aids in the continued suffocation of fires.    Additionally, PFAS-containing AFFF work to suppress fires by smothering the fire, separating the flame from its fuel, cooling the fuel and any adjacent metal surfaces, and suppressing the release of flammable vapors.

## II.     3M's Specific Attempts to Conceal the Environmental Characteristics of PFAS

62.     From 1958 and continuing until and after 2002 (when 3M phased out and stopped selling PFOS and PFHxS products), 3M has been well aware of the various environmental characteristics of Long-Chain PFAS and/or its byproducts.  Yet 3M never shared any of its knowledge with Marathon, when such disclosure would have materially impacted Marathon's purchase, use, and disposal practices of PFAS-containing AFFF.

63.     In addition to concealing the characteristics of PFAS from Marathon, 3M took steps to conceal the characteristics of PFAS from the scientific community.  In 1975, two academic researchers—Dr. William Guy and Dr. Donald Taves—contacted 3M regarding their finding of organic fluorine in blood from blood banks around the country and their belief that 3M's PFOS-based products may have been the source.  3M pleaded ignorance and actively sought to discredit the Guy/Taves study and the authors' contention that PFOS products were the source of the PFAS.  The Guy/Taves study proved prescient.  By 1977, 3M itself confirmed what Guy/Taves already knew—that PFOS was the major organic fluorine compound found in human blood nationwide.

64.     Not only did 3M know that its PFOS was in human blood, 3M also understood very early on that PFAS were mobile.  That is, 3M understood that PFAS could migrate into the soil and later into the groundwater.  In the 1960s, through 3M's manufacturing of PFAS at its own

plants, and the subsequent significant volumes of PFAS-containing wastes associated with this process, 3M was aware that its waste chemicals had reached the groundwater in one of the waste disposal sites it used for PFAS chemicals, the Woodbury Site in Minnesota. 3M later discovered that chemicals disposed of at the Woodbury Site had within about one year of operation migrated to the water table 75 feet below ground.

65. The Woodbury Site was not 3M's only PFAS-contaminated site. Around this same time, 3M learned that groundwater beneath another disposal site in Cottage Grove, Minnesota had contaminated a nearby water well.

66. By 1967, 3M learned of remediation technology for PFAS contamination, when a hydrologist retained by 3M counseled the company that a carbon filtration system could produce "high quality water free of organic chemicals."

67. In addition to concealing information from its customers, 3M concealed critical information about PFAS from government regulators. 3M was obligated under federal law to notify the EPA immediately of information that reasonably supported the conclusion that one of its products could result in injury to the environment. *See* 15 U.S.C. § 2607(e) (hereinafter "TSCA"). 3M was under this obligation since 1976, when TSCA was enacted. 3M, however, chose deceit rather than disclosure and withheld from the EPA numerous scientific studies relating to the environmental characteristics of PFAS—including studies it had conducted as early as the 1950s to the 1970s.

68. In March 1999, a 3M toxicologist, Dr. Richard Purdy, became so concerned with 3M's failure to inform the EPA about the environmental characteristics of PFAS that he copied the EPA on his resignation letter.

69.     In his resignation letter, Dr. Purdy explained that he was resigning from 3M due to his profound disappointment in 3M's handling of the environmental characteristics of PFOS.

70.     Dr. Purdy's resignation letter outlined 3M's obfuscation, delays, and attempts to roadblock research into the environmental characteristics of PFOS. Dr. Purdy noted that he had conducted an assessment for 3M that showed PFOS was a substance that should be reported to the EPA under TSCA. Over Dr. Purdy's objections, 3M chose deceit over disclosure and did not submit the report to EPA at that time.

71.     Dr. Purdy even detailed in an internal email how 3M stalled his efforts to conduct further studies into the characteristics of PFAS and how 3M continually ignored the plans of its own employees to collect essential data for conducting risk assessments of PFOS.

72.     Dr. Purdy also noted in his resignation letter that there were alternative designs available to 3M. According to Dr. Purdy, 3M previously considered chemicals that are just as stable and biologically available as PFOS. In 2000, the same year the phase-out for PFOS was announced publicly, 3M stated that it expected to come up with substitutes for PFOS within the same year, suggesting that the delayed implementation of the alternative formulation was from 3M's decades-long effort to stall and suppress research into PFAS. Indeed "Short-Chain" PFAS compounds, which generally contain fewer carbon atoms and are thus less stable and less persistent than Long-Chain PFAS compounds, are currently found in C-6 based AFFF, and these C-6 AFFFs have been utilized by conscientious AFFF users, such as Marathon, which have become aware of the environmental characteristics of Long-Chain PFAS such as PFOS, PFOA, and PFHxS.

73.     Ultimately, in April 2006, the EPA fined 3M more than one million dollars in penalties for over 200 violations of the TSCA dating back decades. In levying the fine, the EPA noted that many of 3M's violations concerned its reporting, or failure to report, on PFCs and that

the information 3M failed to report was "valuable" and would have "help[ed] the scientific community to better understand the toxic substances in the environment."

74.     Evidence of 3M's complex scheme to conceal its knowledge of the characteristics of PFAS was brought to light in papers filed by the State of Minnesota in November 2017.  The State of Minnesota filed suit against 3M for its contamination of the natural resources in Minnesota because of its manufacturing of Long-Chain based PFAS products and its disposal of wastes stemming from its production processes.  In its motions, the State of Minnesota comprehensively chronicled 3M's decades-long campaign to distort the science and manipulate the press, its customers, and regulators about the characteristics of PFAS.  Shortly before trial, 3M settled the suit with the state for $850 million on February 20, 2018.

### III.     Defendants Continually Sold PFAS-Containing AFFF to Marathon for Decades

75.     Since the 1960s, Defendants have continually manufactured, distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used PFAS-containing AFFF, including selling to Marathon.

76.     Defendants have known for decades that PFAS are mobile, stable, persistent, and resistant to biodegradation and that because their AFFF contains PFAS, the release of Defendants' PFAS-containing AFFF could cause environmental contamination.    Notwithstanding that knowledge, Defendants persistently and intentionally hid the characteristics of PFAS-containing AFFF from Marathon, state and federal regulators, and the public.

77.     Defendants arranged for PFAS-containing AFFF to be disposed into the environment as a result of, or in connection with their distribution, sale, release, supply, transport, arrangement for disposal or treatment, and/or handling of PFAS-containing AFFF to Marathon.

78.     The Defendants have earned substantial profits from Marathon with regard to their business practices related to PFAS-containing AFFF.

79.     Despite their explicit knowledge of the environmental characteristics of PFAS-containing AFFF, Defendants deliberately and intentionally concealed these characteristics of PFAS-containing AFFF from Marathon, state and federal regulators, and the public at large.

80.     Instead of notifying Marathon of the environmental characteristics associated with their PFAS-containing AFFF, Defendants repeatedly assured Marathon that their products were environmentally sound, effective, and appropriate for widespread use.

81.     At all relevant times, Defendants, through their acts and/or omissions, sought to control the science surrounding PFAS, and in particular PFAS-containing AFFF, preventing Marathon from discovering the existence, adverse impacts, and extent of any contamination caused by PFAS-containing AFFF at the Site, which are now regulated and have caused the need for remediation at the Site in accordance with Michigan regulations and enforcement.

82.     At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from Marathon, state and federal regulators, and the public that would have properly and fully alerted Marathon to the environmental characteristics posed by PFAS-containing AFFF and the environmental contamination that could occur as a result of these characteristics.

83.     At all relevant times, Defendants failed to discourage Marathon from continuing to use their PFAS-containing AFFF products, which caused PFAS to be released into the environment surrounding the Site, despite their knowledge of the mobility, stability, persistence, and resistance to biodegradation characteristics associated with PFAS-containing AFFF.

84.     Defendants' actions have caused detections of PFAS at the Site, which Marathon is now being directed to investigate, sample, and possibly remediate.

85.     Despite their knowledge that PFAS-containing AFFF would likely cause environmental contamination, and despite their admitted availability of reasonable and less problematic alternatives, Defendants failed to take appropriate precautionary measures to prevent or mitigate contamination caused by their PFAS-containing AFFF products.

86.     Defendants repeatedly promoted the PFAS-containing AFFF products as being environmentally sound and appropriate for use by Marathon.

87.     At all times relevant to this litigation, Defendants were or should have been aware that contamination to the Site and surrounding environment was inevitable as a result of their sale of PFAS-containing AFFF, due to PFAS's mobility, persistence, and resistance to biodegradation, and that this contamination resulted from the normal and foreseeable use of PFAS-containing AFFF manufactured, distributed, and sold by Defendants.

88.     At all times relevant to this litigation, Defendants were or should have been aware that Marathon would rely upon their acts/or omissions in purchasing the PFAS-containing AFFF products from Defendants, and such reliance resulted in detection of PFAS at the Site, which Marathon is now investigating and cleaning up at the direction of the Great Lakes Water Authority ("GLWA") and the Michigan Department of Environment, Great Lakes, and Energy ("EGLE").

89.     Defendants possess—and have always possessed—vastly superior knowledge, resources, experience, and other advantages, in comparison to any person or any agency, concerning the nature and properties of PFAS and specifically PFAS-containing AFFF.

90.     In addition, by virtue of this superior knowledge, due to Defendants' silence or misleading statements regarding the nature and impacts of their PFAS-containing AFFF products,

Defendants had a duty to disclose to Marathon the truth about the nature of their PFAS-containing AFFF products.

## IV.    **Increased Regulation of PFAS**

91.    The EPA and state environmental agencies have begun investigating various PFAS compounds, including PFOA, PFOS, and PFHxS. These agencies have begun establishing regulatory, cleanup, health standards, and guidelines for PFAS. The EPA has currently set its drinking water health advisory for PFOA and PFOS combined at 70 ppt.

92.    The EPA is currently moving forward with various regulatory actions, including listing PFOA, PFOS, and PFHxS as hazardous substances under Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), listing PFAS as hazardous wastes under the Resource Conservation and Recovery Act ("RCRA"), and creating health advisories for lifetime exposure to PFAS.

93.    In 2019, the EPA released an extensive PFAS Action Plan, which seeks to provide both short-term solutions and long-term strategies to address PFAS substances in the environment. The action plan addresses over twenty key focus areas, including addressing PFAS in drinking water, reducing PFAS exposure, increasing research into the characteristics and environmental fate of PFAS, and funding additional PFAS efforts.

94.    The EPA has published a proposed rulemaking under TSCA for PFAS relating to increased categorization and indexing of chemical properties of PFAS. This proposal would require companies to report information, including the volume of PFAS they manufacture and its chemical identity.

95.     State regulators have also taken notice. In November 2017, Michigan established the Michigan PFAS Action Response Team ("MPART") to address concerns about PFAS contamination in Michigan.

96.     The State of Michigan's Part 4 Rules, Water Quality Standards (of Part 31, Water Resources Protection, of Act 451 of 1994), specify water quality standards for all waters of the state.

97.     Michigan has established water quality standards for surface water for PFOS and PFOA under Rule 57 of the Part 4 Water Quality Standards of Part 31 of NREPA. The applicable water quality standards for PFOS is 12 ppt for streams that are not used for drinking water and 11 ppt for those used as a drinking water source. Similarly, the water quality standard for PFOA is 12,000 ppt for surface waters that are not used for drinking water and 420 ppt for those used as a drinking water source.

98.     Additionally, on January 9, 2018, the Michigan Department of Environmental Quality, the predecessor to EGLE, established drinking water cleanup criteria for PFAS of 70 ppt combined for PFOA and PFOS under the authority of Part 201, which is in line with the EPA's Lifetime Health Advisory.

99.     On August 3, 2020, EGLE adopted the following new standards aimed at protecting Michiganders from PFAS contamination in municipal drinking water:

| PFAS Compound | Drinking Water Standards |
|---|---|
| PFNA | 6 ng/L (ppt) |
| PFOA | 8 ng/L (ppt) |
| PFHxA | 400,000 ng/L (ppt) |
| PFOS | 16 ng/L (ppt) |
| PFHxS | 51 ng/L (ppt) |
| PFBS | 420 ng/L (ppt) |
| HFPO-DA (GenX) | 370 ng/L (ppt) |

100.    During this same time, EGLE also updated Michigan's existing groundwater clean-up criteria of 70 ppt for PFOS and PFOA. The new groundwater standard is 8 ppt for PFOA, 16 ppt for PFOS, and 51 ppt for PFHxS.

101.    These new levels also represent the current cleanup criteria under Michigan Act 245 of 1929 ("NREPA Part 201") for groundwater used as drinking water under the authority of Mich. Admin. Code R. 299.6.

102.    Given the existence of cleanup criteria under NREPA Part 201, PFAS-containing AFFF, including those containing PFOA, PFHxA, GenX, and the 3M specific PFOS and PFHxS, are considered "hazardous substances" under Section 20101(1)(x) of NREPA Part 201, MCL§ 324.20101(1)(x).

103.    The State of Michigan has determined that PFAS-containing AFFF are "hazardous substances" under NREPA Part 201 in recent litigations. On August 20, 2020, the State of Michigan filed suit in both the Ingham County Circuit Court and the United States District Court

for the Western District of Michigan, against 3M, National Foam, Chemguard, Tyco, and other commercial suppliers of PFAS-containing AFFF for alleged natural resource damages caused by the development, sale, release, supply, transport, arrangement for disposal or treatment, handling, and use of PFAS-containing AFFF by the Defendants.

## V.   Marathon's Discovery of the Environmental Characteristics of PFAS-Containing AFFF and its Continued Commitment to the Community

104.   Marathon used PFAS-containing AFFF at the Site with assurances from, and as directed by, Defendants.

105.   Marathon relied upon Defendants' increased knowledge of the environmental characteristics of PFAS-containing AFFF in making its decisions to purchase and use PFAS-containing AFFF.

106.   PFAS-containing AFFF were utilized at the Site to address fires, in training exercises, and in response to mutual aid calls made by the City of Detroit and other municipal firefighting departments.

107.   In 2018, Marathon undertook sampling of its wastewaters emanating from the Detroit Refinery in compliance with Parts 31 and 201 of NREPA. The results showed levels of Long-Chain PFAS such as PFOA, PFOS, and PFHxS above applicable criteria.

108.   Later that same year, on December 20, 2018, Marathon was issued a Notice of Violation by GLWA, identifying Marathon as a potential source of white foam that was observed emerging from a storm water basin in Melvindale, Michigan near the Site.

109.   At the direction of GLWA, Marathon has begun investigating, sampling, and planning remediation of the Site.

110. Since Marathon began wastewater sampling in 2018, Marathon has spent over $6,471,989 assessing and investigating the Site, as well as examining the viability of various treatment options.

111. As of 2019, Marathon has been forced to store or adequately dispose of 3M FC-600 Light Water™, Thunderstorm, and National Foam Universal Gold PFAS-containing AFFF from the Site.

112. These PFAS-containing AFFF inventories at the Site have been replaced by alternative foams, including C-6 AFFF and fluorine-free foam, at Marathon's expense.

113. Refineries, bulk storage facilities, and terminals, such as those owned and operated by Marathon, maintain and/or use AFFF to extinguish Class B fires. Marathon and its facilities are the intended consumers of Defendants' PFAS-containing AFFF products.

114. Marathon owns and operates a refinery and associated facilities in Detroit, Michigan, where Defendants' AFFF products were marketed, purchased, stored, and/or used.

115. As a result of Marathon's historic use of PFAS-containing AFFF, Marathon has incurred and will continue to incur costs of addressing PFAS contamination related to Defendants' PFAS-containing AFFF products.

116. Defendants understood the characteristics of their PFAS-containing AFFF products for several decades before Marathon, state and federal regulators, and the public but actively concealed and misrepresented the nature of PFAS compounds to maximize their own profits. Further, Defendants were aware of alternative product designs, though they have only shifted towards Short-Chain PFAS in recent years.

117. Defendants, by their negligent, reckless, and willful acts and omissions, as set forth above, have, among other things, knowingly withheld information from Marathon regarding the

environmental characteristics of PFAS-containing AFFF, which has resulted in Marathon incurring and continuing to incur costs of addressing PFAS contamination at the direction of GLWA and other regulators.

118.   These costs were incurred by Marathon's reliance on Defendants' increased knowledge of PFAS-containing AFFF and Defendants' assurances regarding PFAS-containing AFFF's environmental characteristics.

119.   As a direct and proximate result of the conduct, omissions, and products of the Defendants, Marathon has incurred and will continue to incur substantial damages and costs associated with their products at the Site, including but not limited to disposing of and replacing unused products containing PFAS-containing AFFF, and continued investigation and remediation of Marathon's Site.  Defendants never revealed the environmental characteristics of their PFAS-containing AFFF products and, merely because Marathon purchased and used Defendants' AFFF products at the Site exactly as intended and instructed, Marathon is now exposed to costs and damages to which it would not have otherwise been exposed.  Marathon did not know, and could not have known, the environmental characteristics of the products it was using – or the subsequent investigation and cleanup it would be directed to conduct because of Defendants' AFFF products.

120.   Accordingly, Marathon brings this action for the following: (1) compensatory and exemplary damages consisting of general and site-specific costs and damages incurred and to be incurred by Marathon including, but not limited to, costs to dispose of unused AFFF products, replacement costs, costs of identifying, investigating, monitoring, and/or remediating Defendants' AFFF products and related costs, and real property environmental stigma/loss of market value damages; (2) declarative relief, finding Defendants liable for all future investigation, remediation,

and restoration costs associated with the Site; and (3) such other equitable relief as may be appropriate at law or equity under the facts established and proven by Plaintiff.

## COUNT I: SILENT FRAUD

121.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

122.    Defendants, as vendors of PFAS-containing AFFF, had a legal duty under MCL 600.2946-600.2949 and an equitable duty to disclose material facts about the environmental characteristics of their products, particularly after the Defendants acquired new information that made their previous affirmative statements misleading or untrue.

123.    Defendants failed to disclose additional information they learned about the environmental characteristics and disposal concerns surrounding their PFAS-containing AFFF and failed to warn Marathon about the knowledge of the environmental characteristics of PFAS they subsequently gained.

124.    Defendants failed to disclose this additional information with the intention of inducing Marathon's reliance on, including its continued purchases of, PFAS-containing AFFF.

125.    Defendants' false representations were reasonably relied upon by Marathon in its decision to purchase and use PFAS-containing AFFF.

126.    As a result of this reliance, Marathon now faces millions of dollars in investigation, sampling, and remediation costs.

## COUNT II: INNOCENT MISREPRESENTATION

127.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

128.    Defendants failed to disclose material information and made affirmative false statements to Marathon regarding the environmental characteristics of PFAS compounds in PFAS-containing AFFF.

129.    Based on these false statements and misrepresentations, Marathon entered into contracts with all Defendants for the purchase of PFAS-containing AFFF.

130.    Based on these false statements and misrepresentations, Marathon purchased and used PFAS-containing AFFF from Defendants for decades.

131.    Because of these false statements and misrepresentations, Marathon is now faced with millions of dollars in cleanup costs, litigation costs, and disposal costs.

## COUNT III: NUISANCE - COMMON LAW/MCL 324.3109

132.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

133.    The use and disposal of PFAS-containing AFFF have caused an unreasonable interference with the use and enjoyment of Marathon's properties.

134.    Defendants produced and sold PFAS-containing AFFF knowing that they would contaminate surface water or groundwater and pollute the environment. As a result of Defendants' sales of chemicals to Marathon that the State of Michigan has deemed harmful and a hazardous substance and that 3M knew or could reasonably foresee would be disposed of at Marathon's properties, Marathon has suffered property damage, including at its Detroit Refinery.

135.    Moreover, PFAS-containing AFFF caused pollution to surface water or groundwater in and around the Site. The pollution constitutes a public or private nuisance.

136.    As a result of the pollution caused by PFAS-containing AFFF, Marathon is now suffering unique harms separate from the general public, including significant liability and remediation costs.

## COUNT IV: FAILURE TO WARN / MCL 600.2948(3)

137.    Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

138.    Marathon's use and disposal of PFAS-containing AFFF was reasonably foreseeable to Defendants.  Defendants knew of Marathon's disposal practices and regularly advised customers like Marathon of appropriate methods to dispose of Defendants' products.

139.    Defendants were aware that the environmental characteristics of PFAS-containing AFFF might result in contamination that would need to be investigated and remediated, and Defendants had a duty to warn Marathon of those risks.

140.    Defendants failed to warn Marathon of any of the environmental characteristics of PFAS, and their effect on use and disposal of PFAS-containing AFFF, even though they were in a superior and unique position to understand these characteristics.

141.    Defendants failed to warn Marathon that PFAS would reach surface water or groundwater and that Marathon might be forced to investigate the Site for potential PFAS contamination.

142.    Defendants knew or should have known of the environmental characteristics of PFAS-containing AFFF as early as the 1960s and at all times thereafter.

143.    To the extent Defendants learned of any environmental characteristics after it sold PFAS-containing AFFF to Marathon, Defendants also failed to warn Marathon of the environmental characteristics of PFAS after it sold PFAS-containing AFFF products to Marathon.

144. The environmental characteristics of PFAS were neither obvious nor known to Marathon, nor were they a matter of common knowledge to other purchasers of PFAS-containing AFFF.

145. If Marathon had known that its use of PFAS-containing AFFF could cause surface water, groundwater, or environmental contamination, it never would have purchased the product in the first instance or would have ceased using the product earlier, adopted different disposal practices, and/or begun cleaning up at an earlier date.

146. As a result of Defendants' failure to warn Marathon of the risks of PFAS, Marathon's properties have been damaged and surface water on and the groundwater underneath those properties have been contaminated by PFAS. Marathon now faces significant potential liability and property damage.

## COUNT V: PRODUCT DESIGN DEFECT

147. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

148. Defendants are in the business of designing, manufacturing, and distributing numerous Long-Chain PFAS-containing products, including PFAS-containing AFFF.

149. Marathon purchased PFAS-containing AFFF directly from Defendants or their agents beginning in the 1970s and continuing into the 2000s.

150. Defendants had a duty to design, manufacture, and distribute its chemical products in a manner that would not cause environmental pollution and/or surface water or groundwater contamination when used for the purposes for which they were designed.

151. Defendants breached their duty by designing, manufacturing, and distributing Long-Chain PFAS-containing products, including PFAS-containing AFFF, knowing that they would and did cause environmental pollution and surface water or groundwater contamination.

152. It was reasonably foreseeable to Defendants, and Defendants knew, that their customers, including Marathon, would use and dispose of PFAS-containing AFFF in a way that could cause PFAS to pollute the environment and contaminate surface water or groundwater.

153. There was a reasonable alternative design available that would have reduced the foreseeable risk of harm posed by the older formulation of PFAS-containing AFFF while maintaining the product's usefulness and desirability.

154. As a result of Defendants' defective PFAS-containing AFFF, Marathon's properties have been damaged and surface water on and the groundwater underneath the properties have been contaminated by PFAS. Marathon now faces significant potential liability, cleanup costs, and property damage.

## COUNT VI: NEGLIGENCE

155. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

156. Defendants owed a duty to act with care in creating, manufacturing, selling, and advising customers regarding the use and disposal of its PFAS-containing AFFF products.

157. Defendants breached their duty by engaging in the conduct alleged above including, but not limited to, creating a product with environmental characteristics that would result in environmental contamination, failing to take action to mitigate those risks, selling products with knowledge of these environmental characteristics, and failing to disclose those environmental characteristics to their customers, including Marathon, regulators, and the general public.

158. Had Marathon been aware of the environmental characteristics of PFAS-containing AFFF, it never would have used the product, or would have switched to an alternative sooner.

159. As a result of Defendants' negligence, Marathon's properties have been damaged and surface water on and the groundwater underneath the properties have been contaminated by PFAS. Marathon now faces significant potential liability, cleanup costs, and property damage.

## COUNT VII: NREPA PART 201 COST RECOVERY

160. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

161. Marathon is a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

162. Defendants are each a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

163. The Site is a "facility" within the meaning of Part 201 of NREPA, MCL 324.20101(1)(s).

164. PFAS are "hazardous substances" under Part 201 of the NREPA, MCL 324.20101(1)(x).

165. PFAS including PFOA, PFOS, and PFHxS are "hazardous substances" under Part 201 of the NREPA, MCL 324.20101(1)(x), based upon EGLE's establishment of residential drinking water cleanup criteria for PFOA, PFOS, and PFHxS under Mich. Admin. Code R 299.6(12), effective January 10, 2018, and under Mich. Admin. Code R 325.10604g, effective August 3, 2020.

166. The leaking, emitting, discharging, escaping, leaching, dumping, and disposal of hazardous substances constitute a "release" or "threat of release" as those terms are defined in MCL 324.20101(1)(pp) and MCL 324.20101(1)(ccc).

167. PFAS have been released into the Site.

168. EGLE has established cleanup criteria for PFOA, PFOS, and PFHxS for exposure pathways including surface water, groundwater-surface water interface, and groundwater as a source of drinking water. MCL 324.20120e(1)(a), Mich. Admin. Code R. 299.6(12).

169. The levels of PFOA, PFOS, and PFHxS in surface water and groundwater at and around the Site have historically exceeded and currently exceed the concentrations that satisfy the cleanup and exposure criteria under Part 201.

170. Defendants arranged for disposal or treatment of PFAS-containing AFFF, which contains PFAS and other "hazardous substances" at the Site within the meaning of Part 201 of NREPA, MCL 324.20126(1)(b).

171. In connection with the releases of "hazardous substances" at the Site, Marathon has incurred and will incur "costs of response activity" within the meaning of Part 201, MCL 324.20101(1)(ww) and MCL 324.20126a(1)(b), to remediate the facility. The costs of response activity were reasonably incurred under the circumstances.

172. Defendants are liable, pursuant to Part 201 of NREPA, MCL 324.20126a(1), to Marathon for past and future costs of response activities.

## COUNT VIII: NREPA PART 201 CONTRIBUTION

173. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

174.    Marathon is a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

175.    Defendants are each a "person" within the meaning of Part 201 of NREPA, MCL 324.20126.

176.    The Site is a "facility" within the meaning of Part 201 of NREPA, MCL 324.20101(1)(s).

177.    There was an actual or threatened "release" of "hazardous substances" within the meaning of Part 201, MCL 324.20101(1)(pp) and MCL 324.20126.

178.    Defendants arranged for disposal or treatment of PFAS-containing AFFF, which contain PFAS and other "hazardous substances" within the meaning of Part 201, MCL 324.20126(1)(d).

179.    In connection with the releases of PFAS-containing AFFF and other "hazardous substances" at the Site, Marathon has incurred and will incur "costs of response activity" within the meaning of Part 201, MCL 324.20129(3).  The costs of response activity were reasonably incurred under the circumstances.

180.    Marathon has incurred, and may be ordered to incur, costs of response activity associated with remediation of the Site, which costs are greater than Marathon's equitable share of those costs.

181.    Defendants are liable, pursuant to Part 201, MCL 324.20126 (1), and MCL 324 20129(3), to Marathon for past and future costs of response activity paid by Marathon in excess of Marathon's equitable share of such costs.

## COUNT IX: UNJUST ENRICHMENT

182. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

183. Marathon has incurred and will continue to incur expenses in connection with the use and presence of Defendants' PFAS-containing AFFF products at the Site, including disposal and replacement costs of unused products, and identification, investigation, monitoring, remediation, assessment, and other costs incurred as a result of the Defendants' fraud and other acts and/or omissions described herein.

184. Defendants are responsible for expenditures related to Defendants' PFAS-containing AFFF products, which were caused by the use of their products. In accordance with equitable principles, Defendants should have to pay these costs. It would be unjust for Defendants to retain the benefit of Marathon's expenditures incurred in connection with their products. For Defendants to fail to make restitution to Marathon would be inequitable. Defendants have been unjustly enriched at Marathon's expense.

185. Accordingly, Marathon requests restitution for the full amount by which Defendants were unjustly enriched and an injunction ordering Defendants to return all monies by which they were unjustly enriched as a result of Marathon's expenditures in connection with Defendants' AFFF products.

## COUNT X: DECLARATORY JUDGMENT

186. Marathon repeats, re-alleges, and incorporates herein by reference each and every allegation contained in the preceding paragraphs, as though set forth herein.

187. The facts and circumstances of this case present an actual controversy regarding the rights and legal relations of the parties.

188. The rights of the parties can only be determined by declaratory judgment.

189. Marathon is entitled under MCR 2.605 to a declaratory judgment declaring and adjudging, among other things, that:

A. Defendants' past and/or present manufacture, sale, supply, handling, and transportation arranged for Marathon's disposal of a NREPA Part 201 hazardous substance at a facility owned or operated by another person, and that such actions require Defendants to pay Marathon's response costs to investigate, sample, and remediate the Site;

B. Defendants are liable for any further response activity costs or damages incurred by Marathon in connection with the Site;

C. All Defendants are strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above; and

D. Marathon's contracts with one or more of the Defendants for the purchase of PFAS-containing AFFF are rescinded.

## **PRAYER FOR RELIEF**

WHEREFORE, Marathon requests judgment in its favor and against all of the Defendants as follows:

A. Declare and adjudge that Defendants' past and/or present manufacture, sale, supply, handling, and transportation arranged for Marathon's disposal of a NREPA Part 201 hazardous substance at a facility owned or operated by another person, and that such actions require Defendants to pay Marathon's response costs to investigate, sample, and remediate the Site;

B. Holding and declaring all Defendants to be strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above, and awarding Marathon damages consisting of costs incurred and to be incurred in responding to any contamination caused by the Defendants' PFAS-containing AFFF products, and damages for injury to, destruction of, and loss of

Marathon's property, including the costs of disposing of and replacing unused products, and assessing, monitoring and/or remediating damages, and the costs of experts needed to make such an assessment;

C.    Holding and declaring all Defendants to be strictly liable, and jointly and/or severally liable as appropriate, to Marathon for the claims set forth above, and awarding Marathon compensatory damages consisting of costs to dispose of unused PFAS-containing AFFF products and real property environmental stigma/loss of market value damages;

D.    Awarding money damages to pay for the remediation and/or restoration of the PFAS chemicals and/or for efforts, and/or to pay for the diminution in market value for the Site;

E.    Awarding exemplary, punitive, and such other damages allowed by statute in an amount to be determined at trial;

F.    Awarding Marathon reasonable attorneys' fees, costs, and other reasonable litigation expenses;

G.    Awarding declarative relief to Marathon, binding on any subsequent action or actions, that holds Defendants liable for any further response activity costs or damages incurred by Marathon in connection with the Site;

H.    Awarding equitable relief for Marathon's reasonably expected future damages as set forth above; and

I.    Awarding such other and further relief at law and/or in equity that the Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Marathon demands a jury on all issues triable by a jury.


Dated: December 16, 2021                    Respectfully submitted,

                                            **KERR RUSSELL AND WEBER, PLC**

                                            By:    */s/ James E. DeLine*
                                                    James E. DeLine (P45205)
                                            KERR RUSSELL AND WEBER, PLC
                                            Attorneys for Plaintiff
                                            500 Woodward Ave, Ste. 2500
                                            Detroit, MI 48226
                                            (313) 961-0200
                                            jdeline@kerr-russell.com

                                            Joe G. Hollingsworth (pending pro hac admission)
                                            Donald W. Fowler (pending pro hac admission)
                                            Carter F. Thurman (pending pro hac admission)
                                            Pete Chattrabhuti (pending pro hac admission)
                                            HOLLINGSWORTH LLP
                                            1350 I Street, N.W.
                                            Washington, D.C. 20005
                                            Telephone: (202) 898-5800
                                            jhollingsworth@hollingsworthllp.com
                                            dfowler@hollingsworthllp.com
                                            cthurman@hollingsworthllp.com
                                            pchattrabhuti@hollingsworthllp.com

                                            *Attorneys for Plaintiff*
                                            *Marathon Petroleum Company LP*

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MARATHON PETROLEUM COMPANY LP,

       Plaintiff,

           v.

3M COMPANY (f/k/a MINNESOTA MINING AND
MANUFACTURING CO.); NATIONAL FOAM,
INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD,
INC.; HAYDEN & COMPANY; WILLFIRE LLC;
and DOE DEFENDANTS 1 TO 20,

       Defendants.

Case No. 21 - _____ CB

HON.

---

James E. DeLine (P45205)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com
*Attorneys for Plaintiff*

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
**HOLLINGSWORTH LLP**
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*

---

## DEMAND FOR TRIAL BY JURY

Marathon demands a jury on all issues triable by a jury.

{39600/2/D1678147.DOCX;1}

Dated: December 16, 2021

Respectfully submitted,

**KERR RUSSELL AND WEBER, PLC**

By:    */s/ James E. DeLine*

James E. DeLine (P45205)
KERR RUSSELL AND WEBER, PLC
Attorneys for Plaintiff
500 Woodward Ave, Ste. 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

Joe G. Hollingsworth (pending pro hac admission)
Donald W. Fowler (pending pro hac admission)
Carter F. Thurman (pending pro hac admission)
Pete Chattrabhuti (pending pro hac admission)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
jhollingsworth@hollingsworthllp.com
dfowler@hollingsworthllp.com
cthurman@hollingsworthllp.com
pchattrabhuti@hollingsworthllp.com

*Attorneys for Plaintiff*
*Marathon Petroleum Company LP*

{39600/2/D1678147.DOCX;1}