# EXHIBIT A

2020 WL 6273447
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Southern Division.

Haifa AL-QAWIE, Plaintiff,
v.
TEVA PHARMACEUTICALS USA, INC., et al., Defendants.

Case No. 20-cv-12248
|
Signed 10/26/2020

**Attorneys and Law Firms**

Timothy P. Smith, Smith, Johnson, Traverse City, MI, for Plaintiff.

Jeffrey F. Peck, Ulmer & Berne, Cincinatti, OH, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO STAY PROCEEDINGS (ECF No. 19)

MATTHEW F. LEITMAN, UNITED STATES DISTRICT JUDGE

*1 On August 19, 2020, Plaintiff Haifa Al-Qawie filed this action against Defendant Teva Pharmaceuticals USA, Inc. and others (*See* Compl., ECF No. 1; Am. Compl., ECF No. 8.) Al-Qawie alleges that she suffered injuries arising out of the use (and removal) of Defendants' ParaGard Intrauterine Device (the "ParaGard IUD"). (*See id.*)

Al-Qawie's action is one of over 50 lawsuits pending in courts across the country arising out of the use of the ParaGard IUD. (*See* Mot. to Stay, ECF No. 19, PageID.371.) On September 24, 2020, one such plaintiff filed a motion before the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") asking that all of the cases arising out of the use of the ParaGard IUD be consolidated in a single action in the United States District Court for the Central District of California (the "MDL Motion"). (*See* MDL Motion, ECF No. 19-1.) Al-Qawie's action is one of the 55 lawsuits that the plaintiff in the MDL Motion has asked to be included in any consolidation order. (*See* ECF No. 19-2, PageID.103.)

On October 22, 2020, Al-Qawie filed a motion asking this Court to stay her action pending the resolution of the MDL Motion. (*See* Mot. to Stay, ECF No. 19.) Defendants oppose the motion to stay. (*See* Resp. to Mot. to Stay, ECF No. 22.) Defendants explain that they oppose Al-Qawie's motion because "they will oppose" the MDL Motion. (*Id.*, PageID.421.)

The Court concludes that a short stay of proceedings while the MDL Panel considers and rules upon the MDL Motion is appropriate. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55, (1936). Moreover, "[c]ourts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case." *State v. United States Environmental Protection Agency*, 2015 WL 5117699, at *2 (S.D. Ohio Sept. 1, 2015) (granting motion to stay pending decision on motion to consolidate). *See also Birchett, Jr. v. Apartment Inv. and Mgmt. Co.*, 2007 WL 4569713 (E.D. Mich. Dec. 26, 2007) (same). Here, judicial efficiency and economy support a stay. In this matter, as in several others involving the ParaGard IUD, there is a motion to dismiss pending. If this action is to be consolidated before a different court, that court would be in the best position to resolve the motions to dismiss in an efficient, consistent, and authoritative fashion. Moreover, a short stay of proceedings will not unduly prejudice the Defendants. This case is in the early stages, and the MDL Panel should be able to issue a prompt ruling on the MDL Motion.

For all of these reasons, and the reasons explained in Al-Qawie's motion, the motion to stay proceedings (ECF No. 19) is **GRANTED**. This action is **STAYED** pending further order of the Court. The parties shall promptly inform the Court as soon as a decision is made on the MDL Motion. If the MDL Motion is denied, the Court will convene a status conference to discuss lifting the stay and setting a new briefing schedule with respect to Defendants' motion to dismiss.

*2 IT IS SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 6273447

---

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 744683
Only the Westlaw citation is currently available.
United States District Court, W.D. Michigan, Southern Division.

Dana NESSEL, et al., Plaintiffs,
v.
CHEMGUARD, INC., et al., Defendants.

No. 1:20-cv-1080
|
Signed 01/06/2021

**Attorneys and Law Firms**

Amy E. Keller, DiCello Levitt Gutzler LLC, Chicago, IL, Danielle Allison-Yokom, Polly A. Synk MI Dept. Attorney General, Lansing, MI, for Plaintiffs.

Nicholas James Ellis, Ann Marie Uetz, Foley & Lardner LLP, Cynthia J. Haffey, Butzel Long PC, Detroit, MI, Shauna Kramer, Williams & Connolly LLP, Matthew D. Thurlow, Baker & Hostetler LLP, Washington, DC, Anthony C. Sallah, Charles M. Denton, Barnes & Thornburg LLP, Paul Donald Bratt, Scott Michael Watson, Warner Norcross & Judd LLP, Grand Rapids, MI, Michael J. Pattwell, Zachary C. Larsen, Clark Hill PLC, Lansing, MI, James K. O'Brien, Karen Libertiny Ludden, Sarah J. Brutman, Dean & Fulkerson, Moheeb H. Murray, Bush Seyferth PLLC, Troy, MI, Patrick C. Lannen, Plunkett Cooney, Bloomfield Hills, MI, Michael Ray Williams, Bush Seyferth PLLC, Kalamazoo, MI, for Defendants.

### ORDER DENYING MOTION TO REMAND

Paul L. Maloney, United States District Judge

*1 This matter is before the Court on Plaintiffs' motion to remand this case back to Ingham County Circuit Court (ECF No. 25). For the reasons to be explained, the motion will be denied.

### I.

This case is one of hundreds of lawsuits brought against manufacturers and distributors of firefighting agents known as aqueous film-forming foams ("AFFF"). The cases claim personal injury, property damage, natural resource damage, or other harms from exposure to certain chemicals contained in AFFF: per-and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid and perfluorooctainesulfonic acid. Plaintiffs allege that PFAS from AFFF "readily migrate in soil, surface water, and groundwater," and that "once these chemicals are released into the environment, they migrate into and cause extensive contamination and injury to State natural resources and property." (Complaint, ECF No. 1-1 at ¶¶ 163–164.) PFAS are "forever" chemicals: they do not degrade in the environment (*Id*. at ¶ 23). Plaintiffs allege that PFAS in the State of Michigan "continue[ ] to move through groundwater, surface waters, soils, and other natural resources, and cause contamination in new locations, adversely impacting State natural resources and property." (*Id.* at ¶ 237.)

There are two relevant types of AFFF: Commercially available AFFF and military grade ("MilSpec") AFFF. MilSpec AFFF is used on military bases and at federally regulated civilian airports (*Id*. at ¶ 4). Commercial AFFF is used in industrial facilities and in some state and local fire departments (*Id.* at ¶ 18). This case, originally filed in Ingham County Circuit Court, alleges that Defendants distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used Commercial AFFF and caused PFAS contamination. A nearly identical complaint, originally filed in this Court at Case No. 1:20-cv-787, alleges that Defendants[1] acted similarly but with MilSpec AFFF.

On November 9, 2020, two Defendants (Chemguard, Inc. and Tyco Fire Products LP) removed the Commercial AFFF case to this Court (ECF No. 1). Removal was based on the "federal government contractor" defense: Chemguard and Tyco are also named Defendants in the MilSpec case, and they argue that it will be impossible to determine which of Plaintiffs' injuries were caused by Commercial AFFF and which were caused by MilSpec AFFF. The injures, Defendants argue, are indivisible, so they intend to assert the same federal government contractor defense in this case that they are asserting in 1:20-cv-787.

There is a Judicial Panel on Multidistrict Litigation ("JPML") considering whether to transfer this action to a multidistrict litigation pending before the Honorable Richard M. Gergel in the District of South Carolina: *In re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation* (MDL No. 2873) ("the MDL"). On September 11, 2020, the JMPL issued a conditional transfer order identifying the MilSpec case as

appropriate for transfer to the MDL (*see* ECF No. 5 in Case No. 1:20-cv-787); that case was uneventfully transferred. On November 12, 2020, the JPML issued a conditional transfer order identifying this case as appropriate for transfer to the MDL (*see* ECF No. 23-1). However, Plaintiffs have objected to the proposed transfer, and the JPML must resolve those objections before the transfer becomes effective.

**\*2** On November 19, Chemguard and Tyco moved to stay this case until after the JPML issues its decision (ECF No. 23). On the same day, Plaintiffs moved to remand the case back to Ingham County Circuit Court (ECF No. 25). Plaintiffs opposed the stay and requested that the Court expedite its decision on their pending motion to remand (ECF Nos. 25, 35). The Court denied the motion to stay and set the motion to remand for oral argument (ECF No. 39). Briefing on the motion to remand has completed, and the Court no longer feels that oral argument is necessary (*see* ECF No. 57).

## II.

As a preliminary matter, this Court has jurisdiction to consider the motion to remand: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." JPML Rule 2.1(d).

"Subject matter jurisdiction is always a threshold determination[,]" and, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." *Morrision v. Humana, Inc.*, No. 3:16-CV-00598-GNS, 2017 WL 2312476, at \*2 (W.D. Ky. May 26, 2017) (quoting *American Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) and 28 U.S.C. § 1447(c)). Federal courts are of limited jurisdiction, so cases are only eligible for transfer to an MDL if jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); JPML Rule 1.1(h). Generally, motions to remand should be resolved before the panel acts on the motion to transfer so the federal court can assure itself of jurisdiction before the case transfers to the MDL. *Johnson v. Micron Technology, Inc.*, 354 F. Supp. 2d 736, 739-40 (E.D. Mich. 2005); *see also Curnow v. Stryker Corp.*, No. 13-13271, 2013 WL 5651439, at \*3 (E.D. Mich. Oct. 15, 2013).

The Defendants [2] argue that this Court has jurisdiction to hear this case based on their federal government contractor defense. While federal jurisdiction is usually determined solely by the claims presented in the complaint, the federal government contractor defense is an exception to that rule. *See Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999). The federal officer removal provision permits a defendant to remove a state-court action brought against the

> United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). This is intended to provide "broad" removal rights to Defendants working with the federal government. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).

This statute has a three-pronged test to entitle Defendants to removal. First, they must establish that they are "person[s]" within the meaning of the statute who "act[ed] under [a federal] officer[.]" *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010), 28 U.S.C. § 1442(a)(1). Second, they must demonstrate that they performed the actions for which they are being used "under color of [federal] office[.]" *Id*. And finally, they must show that they have raised a colorable federal defense. *Id*.

## III.

**\*3** First, there is no dispute that Defendants are "persons" within the meaning of the statute. The Sixth Circuit has concluded that because § 1442 does not exclude corporations, it includes them. *Id*. And there is also no dispute that Defendants were "acting under" a federal officer. A private contractor is "acting under" a federal officer if it is "helping the Government to produce an item that it needs." *Watson*

*v. Philip Morris Co., Inc.*, 551 U.S. 142, 153-54 (2007). Essentially, if a private contractor is performing a job that "in the absence of a contract with a private firm, the Government itself would have had to perform," the contractor is acting under a federal officer. *Id*. In this case, Plaintiffs have admitted that Defendants were producing MilSpec AFFF (*see generally* ECF No. 1 in Case No. 1:20-cv-757). This is a product that the Government would have had to create if Defendants did not exist. Therefore, Defendants have satisfied the "acting under" requirement of § 1442(a)(1).

Second, Defendants performed the actions for which they are being sued "under color of [federal] office." To satisfy this requirement, Defendants must show a nexus or a "causal connection" between the charged conduct and the asserted official authority. *Bennett*, 607 F.3d at 1088. The Supreme Court has indicated that the "hurdle erected by this requirement is quite low." *Issacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (citing *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). It is enough that the challenged conduct occurred while the Defendant was acting at the direction of a federal officer. *Id*. Even if plaintiffs are later able to demonstrate that their injuries occurred "because of an act not contemplated by [the federal contract], it is sufficient for [removal] purposes that [execution of the federal contracts] gave rise of the alleged cross-contamination." *Bennett*, 607 F.3d at 1088. The specific factual questions of whether the challenged act was within the scope of the federal contract are for federal—not state—courts to answer. *Id*.

Here, Plaintiffs argue that the injuries from Commercial AFFF and the injuries from MilSpec AFFF will be distinguishable, but they provide no evidence in support of that allegation: they simply state that they will provide that information "at the appropriate time in the litigation." (ECF No. 25-1 at PageID.340.) The substantial similarity between Plaintiffs' two complaints belies this argument: Plaintiffs admit that each Defendant was producing and selling MilSpec AFFF during the relevant timeframe, and Plaintiffs admit that the chemicals in AFFF get into groundwater and spread contamination throughout the state. The two types of AFFF contain some of the same PFAS compounds (*see* ECF No. 45-17 at ¶ 4). The Court that ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished: right now, there is not clear evidence either way. It is entirely possible that Plaintiffs' injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF.

Plaintiffs argue that that they have divided the two complaints, and that they do not seek resolution of any claims related to MilSpec AFFF here, so this prong of the removal test cannot be satisfied. But Plaintiffs cannot decide what defense Defendants might present. Consider, for example, a tort case: a plaintiff can allege that a defendant and *only* that defendant caused his injury, but a plaintiff cannot prevent a defendant from presenting an alternate theory of causation. Thus, while Plaintiffs attempt to surgically divide their complaints between Commercial and MilSpec AFFF, they cannot prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory, particularly when *Plaintiffs admit* that Defendants produced MilSpec AFFF and that PFAS from AFFF spread contamination throughout the state. The Court finds that Plaintiffs' artful pleading does not obviate the facts on the ground. Defendants were at least plausibly acting under color of federal office during the relevant timeframe, and therefore, Defendants have established the nexus required by § 1442(a)(1).

**\*4** Finally, Defendants must show that they have raised a colorable federal defense. They assert the government contractor defense articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). That defense also has a three-prong test:

> [l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id*. at 512. Defendants need not completely prove the validity of this defense; they must only show that the defense is plausible. *Bennett*, 607 F.3d at 1089.

The Court finds that Defendants (aided by Plaintiffs' admissions about Defendants in 1:20-cv-787) have met

this burden by alleging that the Government provided specifications for MilSpec AFFF, that their AFFF conformed to those specifications, and that they were not aware of any dangers unknown to the Government. Whether these facts are true is not for this Court to determine at this stage. The Court need only consider whether the defense is plausible; it is. Therefore, Defendants have raised a colorable federal defense and satisfied the final prong of the test for removal.

### IV.

For these reasons, the Court finds that it has subject matter jurisdiction to hear this case. Accordingly,

IT IS HEREBY ORDERED that Plaintiffs' motion to remand (ECF No. 25) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiffs' motion to expedite (ECF No. 35) is **DISMISSED** as moot.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 744683

### Footnotes

| | |
|---|---|
| 1 | Case No. 1:20-cv-787 lists all of the Defendants in this case and some additional defendants. |
| 2 | Most Defendants have not answered yet, but several have joined Chemguard and Tyco (*see* Dawn Chemical Corporation of Wisconsin, Inc.'s response in opposition to motion to remand, ECF No. 32, and Royal Chemical Company's response in opposition to motion to remand, ECF No. 46). Because their positions align, the Court refers to these four Defendants collectively. |

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 755083
Only the Westlaw citation is currently available.
United States Judicial Panel
on Multidistrict Litigation.

IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION

MDL No. 2873
|
February 4, 2021

Before KAREN K. CALDWELL, Chair, CATHERINE D. PERRY, NATHANIEL M. GORTON, MATTHEW F. KENNELLY, ROGER T. BENITEZ, DALE A. KIMBALL, Judges of the Panel.

### TRANSFER ORDER

KAREN K. CALDWELL, Chair

*1 **Before the Panel**:[*] Plaintiffs in the three actions listed on Schedule A move under Panel Rule 7.1 to vacate our orders that conditionally transferred their respective actions to the District of South Carolina for inclusion in MDL No. 2873. Defendants Tyco Fire Products, LP, and Chemguard, Inc., oppose all three motions. Defendant 3M Company opposes the motions brought by the *Mauldin* and *Poynter-Abell* plaintiffs. Defendants Dawn Chemical Corporation of Wisconsin, Inc., and Royal Chemical Company, Ltd., oppose the motion brought by plaintiffs in the *Nessel* action.

In support of their motions to vacate, plaintiffs in all three actions argue that federal subject matter jurisdiction over their respective actions is lacking, and that their pending motions for remand to state court should be decided before transfer. The Panel has held that such jurisdictional objections generally do not present an impediment to transfer.[1] *See, e.g.*, In re Prudential Ins. Co. of Am. Sales Practices Litig., 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001). Plaintiffs can present their remand arguments to the transferee court.

Plaintiffs in the *Mauldin* and *Poynter-Abell* actions also argue that transfer of their actions is inappropriate because they do not involve allegations of groundwater contamination. Rather, plaintiffs allege that they are or were firefighters who were exposed to per- or polyfluoroalkyl substances (PFAS) through use of aqueous film-forming foams (AFFFs), which are used to extinguish fires, and by wearing certain protective clothing and gear that allegedly contained PFAS. Plaintiffs thus argue that their actions do not involve the same factual core as the actions pending in MDL No. 2873.

Plaintiffs are correct that our transfer orders in this docket to date have involved allegations that AFFFs used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA, both of which are types of PFAS) into local groundwater and contaminated drinking water supplies. Plaintiffs also are correct that we have been cautious to avoid unnecessarily expanding this MDL to encompass non-AFFF products. *See, e.g.*, Order Denying Transfer at 1–2, MDL No. 2873 (J.P.M.L. Mar. 27, 2020), ECF No. 620 (declining to transfer eight actions that did not allege injury from AFFF use). Even so, MDLs can naturally expand to encompass other claims involving the products at issue and presenting similar factual questions. *See, e.g.*, In re Gen. Motors LLC Ignition Switch Litig., MDL No. 2543, 2014 WL 5597269, at 1 n.1 (J.P.M.L. Oct. 22, 2014) ("While MDL No. 2543 initially included only actions asserting economic damages, it has been expanded to include personal injury and wrongful death actions."). This is such an instance.

*2 The "direct exposure" claims in *Mauldin* and *Poynter-Abell* share several important factual questions with the groundwater contamination cases in MDL No. 2873. Both sets of cases involve factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products. Centralization of these direct exposure claims thus will eliminate duplicative discovery and prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice).

Moreover, the parties do not dispute that MDL No. 2873 already includes more than 350 direct exposure actions by firefighters that were filed directly in the transferee court. At least one firefighter action was transferred by the Panel through the conditional transfer order process without opposition. The plaintiff fact sheet used in the MDL for personal injury claims contains questions regarding direct

exposure and use of AFFF products. *See* Case Mgmt. Order No. 5, Ex. 1, at 3–4, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, C.A. No. 2:18-mn-02873 (D.S.C. Aug. 7, 2019), ECF No. 205 (asking whether "you [have] ever been employed, trained as, or volunteered as a firefighter" and requesting specifics about the use of AFFFs, training provided, and the protective equipment worn"). Transfer of the direct exposure claims in *Mauldin* and *Poynter-Abell* thus will not inhibit the efficiency of the pretrial proceedings in the MDL. [2]

Plaintiffs argue that their claims differ from the firefighter claims in the MDL because plaintiffs focus on the alleged harm stemming from the firefighters' protective equipment. Even if we accept this characterization (which defendants dispute), *Mauldin* and *Poynter-Abell* still involve allegations that the use of AFFFs to extinguish fires caused plaintiffs' injury. "Section 1407 does not require a compete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

Finally, plaintiffs insist that transfer will cause them inconvenience and prejudice, as many of the firefighter plaintiffs are retired and elderly, and many, if not most, of plaintiffs' witnesses are located in California and Missouri. This argument is not persuasive. Centralization under Section 1407 is for pretrial proceedings only, and there usually is no need for parties or witnesses to travel to the transferee court for depositions or court hearings. *See In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003). In any event, transfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay. *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.").

**\*3** Plaintiffs in the Western District of Michigan *Nessel* action—the Attorney General and State of Michigan—oppose transfer on different grounds. Plaintiffs in *Nessel* seek damages and injunctive relief relating to alleged contamination of groundwater with PFAS stemming from use of "commercial" AFFF products (as opposed to "Mil-Spec" AFFF products that were manufactured in accordance with military specifications and primarily used at military bases and airports). Plaintiffs have filed a separate action relating to Mil-Spec AFFF products. That action was transferred to MDL No. 2873 without opposition. *See Nessel v. E.I. du Pont de Nemours & Co.*, C.A. No. 2:20-03307 (D.S.C.).

Plaintiffs primarily argue that their action differs from those in the MDL, including actions in the MDL brought by other states, because they do not assert strict products liability or negligence claims. Many actions in the MDL, however, like *Nessel*, assert state-law claims for trespass and nuisance, as well as claims under environmental protection statutes. Indeed, our initial order centralizing this litigation encompassed actions asserting nuisance claims, trespass claims, state environmental statutory claims, and federal environmental claims under the Resource Conservation Act, the Clean Water Act, and the Comprehensive Environmental Response Compensation and Liability act. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1395 (J.P.M.L. 2018) (rejecting argument that the causes of action and parties in the AFFF actions differed so significantly that any efficiencies from centralization would be offset by delay). This litigation is not limited to actions asserting products liability claims. [3]

The critical issue under Section 1407 is whether *Nessel* shares common questions of fact with the actions in the MDL. On this point, plaintiffs emphasize that their action pertains only to "commercial" AFFF products. We have rejected similar attempts to cabin MDL No. 2873 to Mil-Spec AFFF products. *See* Transfer Order at 2 n.2, MDL No. 2873 (J.P.M.L. June 5, 2019), ECF No. 446 ("The Panel did not limit this litigation to particular types of AFFF products."). Many of the claims pending in the MDL—including many of the previously-addressed direct exposure claims by firefighters—relate to commercial AFFF products. *Nessel* will share common factual questions with these actions and will benefit from pretrial coordination in the MDL.

Furthermore, it seems likely that plaintiffs' commercial AFFF and Mil-Spec AFFF actions will share common factual questions, as both involve contamination of the same groundwater in the State of Michigan. Indeed, this was a point of emphasis in the transferor court's order denying plaintiffs' motion for remand to state court. *See* Order Denying Mot. to Remand at 7, *Nessel v. Chemguard, Inc.*, C.A. No. 1:20-01080 (W.D. Mich. Jan. 6, 2021), ECF No. 60 ("[W]hile Plaintiffs attempt to surgically divide their complaints between Commercial and MilSpec AFFF, they cannot prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory, particularly when *Plaintiffs admit* that Defendants produced MilSpec

AFFF and that PFAS from AFFF spread contamination throughout the state.") (emphasis in original). We previously rejected an attempt by a water authority to split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL. *See* Transfer Order at 2, MDL No. 2873 (J.P.M.L. Oct. 5, 2020), ECF No. 691 ("Plaintiff could have asserted all of these claims in the same action, but instead chose to split these claims across two actions. It would be inefficient for these actions to proceed separately and potentially prejudicial to the parties."). Likewise, it would inefficient for plaintiffs' commercial AFFF action to proceed separately from its Mil-Spec AFFF action.

 **\*4**  Accordingly, after considering the argument of counsel, we find that the actions listed on Schedule A involve common questions of fact with the actions transferred to MDL No. 2873, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In our order centralizing this litigation, we held that the District of South Carolina was an appropriate Section 1407 forum for actions in which plaintiffs allege that AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOS and/or PFOA into local groundwater and contaminated drinking water supplies. The actions in the MDL share factual questions concerning the use and storage of AFFFs; the toxicity of PFAS and the effects of these substances on human health; and these substances' chemical properties and propensity to migrate in groundwater supplies. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d at 1394. *Nessel* similarly involves allegations that the groundwater in Michigan was contaminated by PFOS and/or PFOA stemming from use of AFFF products. And, for the reasons stated, direct exposure claims by firefighters, such as those in *Mauldin* and *Poynter-Abell*, will involve many of the same common questions of fact as the groundwater claims in the MDL.

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of South Carolina and, with the consent of that court, assigned to the Honorable Richard M. Gergel for coordinated or consolidated pretrial proceedings.

### SCHEDULE A

MDL No. 2873 — **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION**

Northern District of California

   MAULDIN, ET AL. v. 3M COMPANY, ET AL., C.A. No. 5:20-07212

Western District of Michigan

   NESSEL, ET AL. v. CHEMGUARD, INC., ET AL., C.A. No. 1:20-01080

Eastern District of Missouri

   POYNTER-ABELL v. 3M COMPANY, ET AL., C.A. No. 4:20-01568

**All Citations**

Slip Copy, 2021 WL 755083

---

### Footnotes

| | |
|---|---|
| \* | Judge David C. Norton did not participate in the decision of this matter. |
| 1 | Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so. Indeed, the transferor court in the Western District of Michigan *Nessel* action denied plaintiffs' remand motion on January 6, 2021. |
| 2 | Plaintiffs argue that we should discount the pendency of the direct exposure actions in the MDL because neither the Panel nor the transferee court has yet had to resolve any opposition to including these cases in the MDL. The problem with this argument is that, were we to decline to transfer *Mauldin* and *Poynter-Abell*, there would still be a large mass of direct exposure cases in the MDL. Denying transfer would only ensure |

|   |   |
|---|---|
|   | that multiple courts would have to address the common factual issues and pretrial proceedings presented by these actions. |
| 3 | Plaintiffs place too much emphasis on our order transferring *parens patriae* actions by the State of New York and the State of Ohio, which noted that those actions asserted products liability actions similar to those asserted in other actions in the MDL. *See* Transfer Order at 1–2, MDL No. 2873 (J.P.M.L. Apr. 2, 2019), ECF No. 384. We did not limit transfer of *parens patriae* actions to those presenting products liability claims. |

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 252685
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

David G. TIBBETTS
v.
3M COMPANY, f/k/a Minnesota Mining
and Manufacturing Company, et al.

CIVIL ACTION NO. 21-2400
|
Signed 01/27/2022

**Attorneys and Law Firms**

Daryl A. Gray, Jason P. Franco, Eric Anthony Wright, Wright, Pichon & Gray, PLC, Jeanne Arceneaux, The Cheek Law Firm, Lindsey A. Cheek, New Orleans, LA, for David G. Tibbetts.

Craig Isenberg, Janelle E. Sharer, Barrasso Usdin Kupperman Freeman & Sarver LLC, New Orleans, LA, for Chemguard, Inc., Tyco Fire Products LP.

SECTION "F"

ORDER AND REASONS

NANNETTE JOLIVETTE BROWN, CHIEF JUDGE

**\*1** Before the Court is defendants' motion to stay this action pending final transfer decision by the Judicial Panel on Multidistrict Litigation. For the reasons that follow, the motion is GRANTED.

**Background**

After working as a firefighter for more than 40 years, David Tibbetts developed bladder cancer, which he attributes to his occupational exposure to certain polyfluoroalkyl substances (PFAS) contained in firefighting agents known as aqueous film-forming foam (AFFF). At least one defendant intends to assert the federal government contractor defense on the ground that, until recently, it and other defendants developed and manufactured for sale to the United States military, civilian airports, and others "MilSpec AFFF" in accordance with the military's rigorous specifications. [1]

Alleging that his November 2020 bladder cancer diagnosis "was due to and a consequence of his exposure to Defendants' Aqueous Fire Fighting Foam ("AFFF") products containing synthetic, toxic, per- and polyfluoroalkyl substances and products[,]" Mr. Tibbetts sued numerous defendants in Civil District Court for the Parish of Orleans, seeking to recover punitive and other damages under theories of strict liability, negligence, and civil conspiracy. Mr. Tibbetts is not alone in challenging harms allegedly caused by AFFF: AFFF manufacturers, their suppliers, and other defendants face numerous product liability actions alleging harms from PFAS in AFFF. Many are proceeding in multi-district litigation in the District of South Carolina, In re Aqueous Film-Forming Foams Products Liability Litigation.

On December 30, 2021, Tyco Fire Products LP and Chemguard, Inc. removed Mr. Tibbetts's lawsuit to this Court, invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Notably, the removing defendants note that the court currently overseeing the In re Aqueous Film-Forming Foams Products Liability Litigation multi-district litigation has found that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiff's injuries are caused, at least in part, by military grade AFFF.

The JPML established the AFFF MDL in December 2018 to coordinate pretrial proceedings in all then-pending and subsequently filed cases in the federal courts involving allegations of personal injury, property damage, or other harms caused by AFFF. In re Aqueous Film-Forming Foams Prods. Liab. Litig., 357 F. Supp. 3d 1391 (J.P.M.L. 2018). Of the 2,000+ cases comprising the MDL, more than half are lawsuits like Mr. Tibbetts's brought by current or former firefighters alleging personal injuries from exposure to AFFF. Since the MDL was formed three years ago, Judge Richard M. Gergel has ruled on various common issues, including several motions to remand. [2]

**\*2** On January 5, 2022, the JPML issued a conditional transfer order identifying this case as appropriate for transfer to the In re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation. The plaintiff has objected to the conditional transfer order; this contested briefing on transfer will be resolved by the JPML.

Typco Fire Products, LP and Chemguard, Inc., the removing defendants in this case, now request a temporary stay of all proceedings in this matter, including the deadline to file responsive pleading and briefing on any motion to remand contemplated by the plaintiff, pending the Judicial Panel on Multidistrict Litigation's ruling on transfer of this case to the MDL pending in the District of South Carolina.

I.

The Court's power to stay litigation is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). In considering whether to exercise its inherent discretion to stay proceedings, the Court "must weigh competing interests and maintain an even balance." Id. Factors courts consider when determining whether to stay an action pending an MDL determination include: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is transferred or consolidated. See La. Stadium & Exposition Dist. v. Fin. Guar. Ins. Co., No. 09-235, 2009 WL 926982, at *1 (E.D. La. Apr. 2, 2009) (Engelhardt, J.); see also Rizk v. DePuy Orthopaedics, Inc., No. 11-2272, 2011 WL 4965498 (E.D. La. Oct. 19, 2011) (Feldman, J.).

The Manual for Complex Litigation instructs that it is often advisable to stay litigation in order to defer to the MDL court for resolution of certain matters, or until the Panel has the opportunity to rule on the issue of transfer. See Rizk, 2011 WL 4965498, at *2 (citation omitted). This deference to the MDL court promotes "uniformity, consistency, and predictability in litigation that underlies the multidistrict litigation system." Id. (citation omitted). So, too, here.

A stay is warranted, the defendants submit, because the JPML will likely order transfer (given the plaintiff's express allegation that his injuries arise from his exposure to AFFF) and the JPML is likely to render its decision shortly after its March 31 hearing session (briefing on the plaintiff's motion to vacate the conditional transfer order will close on February 25, 2022). If the case is transferred to the MDL, the transferee court can address any jurisdictional issues the plaintiff raises. If the JPML denies transfer, this Court can take up these issues. The plaintiff counters that the Court should deny the motion to stay because no hearing date has been set by the MDL Panel to resolve the contested transfer issue, issues of jurisdiction may be considered by this Court prior to any transfer, and the prejudice Mr. Tibbetts faces in terms of the uncertainty of the timing for resolution of transfer outweighs the defendants' interests in uniform decisions as well as this Court's interest in conserving judicial resources.

*3 Like in prior cases awaiting transfer decisions by the MDL Panel, the Court is persuaded that the balance of interests strongly favors a stay: the stay is likely to be relatively brief; it will not prejudice the plaintiff, despite his non-specific protestation of prejudice due to awaiting a ruling from the Panel on his challenge to the conditional transfer order and on a motion to remand that has yet to be filed; it will avoid prejudice to the defendants; and it will conserve judicial resources and ensure consistent rulings on common issues -- issues that have been and are being resolved by the MDL Panel.

Because the balance of factors favors a brief stay of this case pending the Panel's determination as to whether this case should be transferred to the MDL for coordinated pretrial proceedings,

IT IS ORDERED that the defendants' motion to stay proceedings pending transfer to the MDL is GRANTED. This matter is hereby stayed and administratively closed pending the MDL Panel's determination regarding transfer.

**All Citations**

Slip Copy, 2022 WL 252685

---

**Footnotes**

1     According to the defendants, the U.S. military developed the highly effective firefighting agent, AFFF, in the 1960s to quickly extinguish liquid fuel fires. Today, it is used on Navy ships and military bases and at larger

    civilian airports. The chemical components that give AFFF its superior fire-suppression features are various types of fluorinated surfactants, which are part of the large chemical family known as per- and polyfluoroalkyl substances (PFAS) and they contain or can degrade into other PFAS chemicals including perfluorooctanoic acid (PFOA) and perfluorooctaine sulfonic acid (PFOS).

2     According to the defendants, the parties proceeding in the AFFF MDL are now in the midst of summary judgment briefing on the defendants' government contractor defenses as to injuries allegedly caused by military-grade AFFF.

---

**End of Document**     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5567417
Only the Westlaw citation is currently available.
United States District Court, D. Alaska.

James F. SARACCO and
Lisa Etherington., Plaintiffs,
v.
State of ALASKA and City of Gustavus, Defendants.
State of Alaska, Third-Party Plaintiff,
v.
3M Company, et al., Third-Party Defendants.

Case No. 1:21-cv-00015-SLG
|
Signed 11/24/2021
|
Filed 11/29/2021

**Attorneys and Law Firms**

Christian Bataille, Flanigan & Bataille, Anchorage, AK, Kevin Scott Hannon, Pro Hac Vice, The Hannon Law Firm, Denver, CO, for Plaintiffs.

Aaron David Sperbeck, Michael J. Schwarz, Birch Horton Bittner & Cherot, Anchorage, AK, for Defendant/Third-Party Plaintiff State of Alaska.

Megan J. Costello, Robert Blasco, Hoffman & Blasco, LLC, Juneau, AK, for Defendant City of Gustavus.

Brewster H. Jamieson, Michael Bruce Baylous, Lane Powell LLC, Anchorage, AK, for Third-Party Defendants Tyco Fire Products LP, Chemguard, Inc.

### ORDER RE MOTION TO STAY

Sharon L. Gleason, UNITED STATES DISTRICT JUDGE

*1 Before the Court at Docket 15 is Third-Party Defendants Tyco Fire Products, LP and Chemguard, Inc.'s (collectively, "Tyco") *Motion to Stay This Action Pending Final Transfer Decision by the Judicial Panel on Multidistrict Litigation.* Plaintiffs James F. Saracco and Lisa L. Etherington (collectively, "Plaintiffs") responded in opposition at Docket 26. The City of Gustavus (the "City") also responded in opposition at Docket 27. Tyco replied at Docket 32.

### DISCUSSION

Plaintiff commenced this action in state court against the State of Alaska and the City in 2019.[1] Plaintiffs allege that the City negligently used aqueous film-forming foams ("AFFF") firefighting agent, which was contained in a firefighting truck provided to the City by the State, to extinguish a brush fire on Plaintiffs' property. Plaintiffs further allege that the City and State knew or should have known that AFFF firefighting agent contained toxic chemicals that have contaminated Plaintiffs' property.[2]

In April 2021, the State filed a third-party complaint against numerous AFFF manufacturers as third-party defendants, including Tyco and Chemguard.[3] In August 2021, Tyco removed the action to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[4] Tyco then sought to transfer this action to the multidistrict litigation ("MDL") proceeding, *In re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, MDL No. 2873, currently pending in the District of South Carolina. The Judicial Panel on Multidistrict Litigation ("JPML") issued a conditional transfer order ("CTO") to the MDL court.[5] Plaintiffs and the City have filed motions to vacate the CTO,[6] which the JPML has stated it will consider at its December 2, 2021 hearing session.[7]

Tyco now moves to stay this action pending the JPML's decision on the motion to vacate the CTO.[8] Both Plaintiffs and the City oppose the motion to stay and move separately to remand this action back to Alaska state court.[9] Plaintiffs and the City contend that the federal contractor defense does not apply to confer federal jurisdiction and that there is no other basis for federal jurisdiction. Accordingly, Plaintiffs and the City ask this Court to deny the motion to stay and instead grant their motions to remand.[10]

For the reasons discussed below, the Court finds that granting the stay would advance judicial economy, promote consistency, and present minimal hardship to Plaintiffs and the City.[11]

*2 Plaintiffs' and the City's motions to vacate the CTO contain many of the same jurisdictional arguments presented in their oppositions to the stay and their motions to remand

in this Court. By granting the stay, the Court avoids the risk of duplicative work and potentially inconsistent rulings with respect to Plaintiffs' and the City's jurisdictional arguments. Moreover, it is within the Court's discretion to issue a stay pending the JPML's decision on transfer even when there is a pending challenge to the federal district court's jurisdiction.[12] The Court also finds there will be minimal hardship to Plaintiffs and the City in granting the stay. The JPML likely will decide their motions to vacate within a matter of weeks, presenting only minimal delay to an action for damages. Should the JPML deny transfer, Plaintiffs' and the City's motions to remand are already ripe for consideration by this Court; and, in the event the case is transferred to the MDL. Either way, a brief stay of this matter while the JPML considers the motion to vacate is likely to preserve judicial resources, avoid duplicative litigation in multiple fora, and ensure consistent outcomes on common questions.

Accordingly, the Court will stay the litigation in this forum until the JPML determines the until the JPML determines Plaintiff's and the City's motions to vacate the CTO.[13]

## CONCLUSION

In light of the foregoing, Tyco's motion at Docket 15 is GRANTED. The Court hereby stays all proceedings in this matter until the JPML rules on Plaintiffs' and the City's motions to vacate the CTO and renders a final transfer decision.

**All Citations**

Slip Copy, 2021 WL 5567417

## Footnotes

1. Plaintiff's original complaint had originally named AFFF manufacturers as defendants, but these entities but were not included as named defendants in Plaintiff's First Amended Complaint.
2. *See* Docket 1-2.
3. *See* Docket 1-1.
4. *See* Docket 1.
5. Conditional Transfer Order, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (J.P.M.L. Aug. 20, 2021), Docket 1077.
6. Dockets 1132, 1133, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (Sept. 27, 2021).
7. Hearing Order, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (J.P.M.L. Oct. 18, 2021), Docket 1143.
8. *See* Docket 15.
9. *See* Dockets 16, 19.
10. *See* Dockets 26, 27.
11. *See Bowie v. Medtronic, Inc.*, Case No. 3:08-CV-00090 TMB, 2008 WL 11336904, at *1 (D. Alaska Aug. 13, 2008) (addressing judicial economy, consistency, and hardship to plaintiff in considering whether to stay the proceeding); *see also Lyon v. DePuy Orthopaedics, Inc.*, Case No. 19-cv-05270-PJH, 2019 WL 4933586, at *2 (N.D. Cal. Oct. 7, 2019) ("Courts generally grant a stay pending resolution of consolidated proceedings when a stay would avoid the needless duplication of work and the possibility of inconsistent rulings." (quoting *Freitas v. McKesson Corp.*, Case No. C 11-05967 JW, 2012 WL 161211, at *2 (N.D. Cal. Jan. 10, 2012))).
12. *See, e.g., Bowie v. Medtronic, Inc.*, Case No. 3:08-CV-00090 TMB, 2008 WL 11336904, at *1 (D. Alaska Aug. 13, 2008).
13. While recognizing the City's unique position in this litigation, the Court has confidence in both the JPML and the MDL court to consider the unique factual nature of this case and the parties' positions and discovery needs.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.